Laidley, Inc. v. Commissioner.
Laidley v. Commissioner
Docket No. 79539.
United States Tax Court
T.C. Memo 1961-183; 1961 Tax Ct. Memo LEXIS 167; 20 T.C.M. (CCH) 917; T.C.M. (RIA) 61183; June 19, 1961
*167 Held, that the $79,846.91 unsecured promissory note issued by petitioner on the day of its formation and before it had issued any capital stock, to two individuals who thereafter became its sole stockholders, in exchange for petitioner's principal asset, did not in reality represent an indebtedness, but rather an equity capital investment; and that petitioner is not entitled to deductions for "interest" which it paid on said note. Conrad T. Hubner, Esq., for the petitioner. Cyrus A. Johnson, Esq., for the respondent. PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge: The respondent determined deficiencies in income tax against the petitioner-corporation, for years and in amounts as follows: Fiscal Year Ended
Deficiency
April 30, 1955
$3,735.62
April 30, 1956
1,197.70
April 30, 1957
2,076.02
*168 The only issue presented for decision is whether certain amounts paid by the petitioner to its shareholders represented interest on indebtedness which is deductible from gross income under section 163(a) of the 1954 Code, [1] or whether such amounts represented dividends which are not deductible. Findings of Fact Many of the facts were stipulated. The stipulation of facts, together with the exhibits identified therein, is incorporated herein by reference. Petitioner is a corporation organized under the laws of the State of California. It filed its income tax returns for the taxable fiscal years ended April 30, 1955, 1956 and 1957, which are here involved, with the district director of internal revenue at San Francisco, California. Vulcan Steel Foundry (hereinafter called the "Vulcan partnership") was a partnership which had for many years prior to 1953 been engaged in the business of manufacturing and selling "low carbon, alloy, and stainless steel castings." Prior to May 1, 1953, the Vulcan partnership was owned by three general partners, in the following respective *169 proportions: Conrad Hubner
50 percent
William S. Laidley
20 percent
H. & 6., Inc.
30 percent William S. Laidley served as the managing partner and general manager of said partnership's foundry business. Hubner was an attorney. H. & L., Inc., was a California corporation of which the sole and equal shareholders were two individuals, R. C. Hoyt, and Laidley's wife, Ella Margaret Laidley. On or about April 14, 1953, William consulted his attorney and tax advisor, the above-mentioned Hubner, regarding the formulation of some plan for making provision, in the event of his death, for his three minor children who were then aged 3, 9, and 11 years, respectively. On the day following this conference, Hubner advised by letter that William and Ella Margaret should acquire H. & L.'s 30 percent interest in the Vulcan partnership, by having Ella Margaret turn in her stock in H. & L., Inc. (which had a book value of approximately $57,000); and by having William (1) cancel a $15,000 debt owing to him by H. & L. and also (2) pay over to H. & L. approximately $8,000 in cash. Hubner's letter of advice to William then continued: You [William] and Ella Margaret would thereupon *170 transfer the 30% interest acquired in the steel foundry to a new corporation which you would form, and you would sell the same * * * [to] that corporation for $80,000 and would thereafter make a gift of the stock in equal shares to each of your three children. The corporation would be incorporated for a substantial amount of money, but we would only issue a nominal amount of shares and the proceeds from the issuance thereof would be required to pay the expenses of incorporation. Since the corporation owes the full purchase price of the partnership interest, its shares have no value and the gift thereof to the children would involve no gift tax. Since you are transferring the interest to the corporation at its cost to you, you in turn have no gain or loss on the transaction and there is no income tax generated as a result thereof. As the corporation collects its share of the profits, it pays its income taxes thereon and may use the balance to pay its debt to you and Ella Margaret. * * *
I think that the foregoing sets forth the plan which would accomplish your desires and generate no taxes in connection therewith and effect the greatest tax savings in the future. About two *171 weeks later, on May 1, 1953, Laidley, Inc., the petitioner in the instant case, was organized with Hubner, Hubner's law partner, and another individual as the incorporators. Its articles of incorporation stated that its authorized capital stock consisted of 10,000 shares of common stock having a par value of $10 per share. Said articles of incorporation further provided that the three incorporators were appointed to act as the first directors. No shares of stock were actually issued by the petitioner until almost 1 year later, on April 27, 1954. The petitioner's books of account are not in evidence; and the record herein does not reveal: (1) What, if any, advances were made to petitioner prior to the issuance of its shares of stock; (2) who made any such advances, if such were made; or (3) how, if advances were made, they were recorded on petitioner's books and records. On the same date that Laidley, Inc., was organized (May 1, 1953) H. & L., acting through its president (the above-mentioned R. C. Hoyt) executed a bill of sale, whereby it did "Grant, Bargain, Sell and Convey" to William and Ella Margaret, jointly and in unidentified portions, the corporation's 30 percent interest *172 in the Vulcan partnership; and then on the same day, William and Ella Margaret by written instrument did "grant, bargain and sell, transfer and convey" to the petitioner this same interest in the Vulcan partnership which they had just acquired. William and Ella Margaret received at the same time, and in exchange for such interest, petitioner's unsecured promissory note dated May 1, 1953, in the face amount of $79,846.91, bearing interest at the rate of 5 percent per annum until paid. Among the provisions of this promissory note was the following: "This note shall be payable on demand and if no demand is made then five years from date hereof." Petitioner recorded the foregoing transaction on its books of account by making the following entry in its general journal: Dr.
Cr.
May 1, 1953 - Partner-
ship Investment, Vulcan
Steel Foundry Com-
pany
$79,846.91
Notes Payable - Wm. S.
& Ella H. Laidley
$79,846.91
To record purchase of 30% interest in Vulcan Steel Foundry Co., copartnership as of 4/30/53 and set up note payable accepted in consideration thereof. At the time of the foregoing transaction, petitioner had no shares of its capital stock issued *173 and outstanding. Later in the year, on December 22, 1953, the directors of the petitioner held their first meeting. The meeting was mainly concerned with such formalities as adopting a code of by-laws, fixing the location of petitioner's business office, and adopting a form for the stock certificates to be issued by petitioner. In addition, the minutes reflect the following action taken at the meeting: Mr. Hubner stated that the principal desire of Mr. and Mrs. Laidley was to give shares of stock of this corporation to their children in order that their children may commence to accumulate an estate and eventually that said children would be able to actively enter into business life and activities, and might commence obtaining experience in connection therewith at the earliest possible date. Mr. Hubner stated that Mr. Laidley at this time only desired to subscribe for a nominal amount of stock, as his plan contemplated a long range program. * * * Resolutions were thereupon adopted by said board of directors, authorizing and directing Hubner to make application to the Commissioner of Corporations of the State of California, for a permit to issue 100 shares of petitioner's stock *174 to William and Ella Margaret. Thereafter, on February 11, 1954, a permit to issue stock was granted to petitioner by the State of California. On April 27, 1954, as hereinabove found, petitioner issued 100 shares of its stock to William and Ella Margaret as joint tenants, for $1,000 cash. The issuance of said shares was recorded in the petitioner's books of account by means of the following entry in its general journal: Dr.
Cr.
April 27, 1954
,cash
$1,000
W. S. Laidley, Capital
Stock 100 shares at
$10.00 per share
$1,000
At an unidentified date prior to the close of petitioner's first taxable year here involved, William was elected president of the petitioner; and he continued to hold said office throughout the taxable years involved. At all times from and after April 27, 1954, and until May 1960, the entire outstanding capital stock of the petitioner, consisting of the above-mentioned 100 shares only, was owned by William and Ella Margaret. None of the above-mentioned contemplated gifts of stock to the children have ever been made. The petitioner has never carried on any business operations. It has done nothing more than to hold an interest in the *175 Vulcan foundry, and to make the following investments: Pro-
Date Ac-
Date
ceeds
Expenses
Gain or
Investment
quired
Cost
Sold
of sale
of sale
(loss)
300 shs.
H. & L.,
5/24/54
$28,177.78
6/12/57
$30,232.10
$2,054.32
Inc.
100 shs.
Storer
4/ 7/55
2,462.50
4/30/56
2,525.00
$32.00
30.50
Broadcast
Co.
100 shs.
General
5/ 1/56
4,375.00
4/10/57
4,000.00
35.20
(410.20)
Motors
1,000
Leeds
Unspeci-
10,000.00
shs.
Machine
fied
Works
date
between
5/ 1/55
&
4/30/56
On July 1, 1956, the Vulcan partnership was incorporated pursuant to the laws of the State of California, under the name of Vulcan Steel Foundry, Inc. (hereinafter called the "Vulcan corporation"); and William became president of the corporation. On the same date, petitioner's 30 percent interest in the Vulcan partnership (which then had a value of $111,835.97) was exchanged for 300 shares of common stock of the Vulcan corporation (representing 30 percent of the total number of shares outstanding) which were carried on the Vulcan corporation's books at an assigned "cost" of $31,752.56, and an account payable *176 by the Vulcan corporation to petitioner in the amount of $80,083.41 (thus making a total of $111,835.97). The following table shows the amount of petitioner's distributive share of the Vulcan partnership's profit and the amount thereof actually withdrawn by petitioner, for each of the partnership's fiscal years ended June 30, 1953, through 1956: Petitioner's
Distributive
Amount
Partnership's
Share of
Actually
Fiscal Year
Partnership
Withdrawn
Ended
Profits
by Petitioner
June 30, 1953 *
$ 6,546.31
None
June 30, 1954
31,721.75
$30,066.66
June 30, 1955
21,376.81
19,186.62
June 30, 1956
49,546.47
27,949.00
Petitioner's only sources of income from the time of its incorporation, through April 30, 1959, have been: (1) Its distributive shares of the profits of the Vulcan partnership as hereinbefore shown; (2) capital gains from sale of the miscellaneous investments above described; and (3) $145 dividends and $3.98 interest received during its fiscal year ending April 30, 1956. The Vulcan corporation which succeeded to the business of the Vulcan partnership on July 1, 1956, did not declare *177 any dividends to its shareholders from the time of its formation until June 30, 1959. Payments, designated as "principal" or "interest," were made by petitioner on its above-described promissory note which it issued to William and Ella Margaret in connection with their transfer to petitioner of the interest in the Vulcan partnership, as follows: Petitioner's
Fiscal Year
when Payment
Made
Interest
Principal
April 30, 1954
None
None
April 30, 1955
$7,984.69
None
April 30, 1956
3,992.35
None
April 30, 1957
3,992.35
None
April 30, 1958
3,373.72
$14,846.91 *
April 30, 1959
None
None
April 30, 1960
None
None Said note was still outstanding in May 1960, 2 years after its maturity date of May 1, 1958. The record herein does not disclose that any demand has been made by William and Ella Margaret for payment of the $65,000 balance due on the principal thereof, or of any of the due but unpaid interest thereon. From the date of its incorporation up to and including its fiscal year ending April 30, 1960, the petitioner has never declared a "dividend" as such, to its stockholders. Petitioner, on its Federal *178 income tax return for each of the years involved deducted the amount, above listed, which it paid to William and Ella Margaret in each year as "interest" on its above-described note. The respondent, however, in his statutory notice of deficiency determined that said deductions were not allowable, on the ground that the amounts paid and deducted did not represent "interest on indebtedness," within the meaning of section 163(a) of the 1954 Code. Opinion The basic question in the instant case is whether the note for $79,846.91 which petitioner issued to two individuals (who were also its sole shareholders), William and Ella Margaret Laidley, represents an "indebtedness" (as that term is used in section 163(a)) owing by petitioner to said shareholders. If it does, then petitioner was correct in deducting, as interest, the payments which it made to William and Ella Margaret, pursuant to the terms of the note. And conversely, if the note does not represent an "indebtedness," but rather (as respondent contends) an equity capital investment in the petitioner by William and Ella Margaret, then petitioner was not entitled to deduct such payments, for they would represent merely dividends *179 to the shareholders, which of course would not be deductible. The problem of determining the true nature of advances to closely held corporations has arisen frequently in cases involving so-called "thin corporations," wherein the major portion of the cash and/or property required to get said corporations established and under way has been evidenced by the corporations' promissory notes. , affd. (C.A. 7) . The numerous decided cases dealing with "thin corporations" have not laid down any comprehensive "rule of thumb" by which the true nature of such advances may be determined in all situations. Rather, each case depends upon its own peculiar facts. , affirming . However, the decided cases have pointed out or suggested various tests or criteria which may be applied in seeking out the all-important substance and reality of the transactions wherein funds and property are advanced to corporations by their shareholders. The Court of Appeals for the Ninth Circuit has recently enumerated a number of such tests, as *180 follows: There are at least eleven separate determining factors generally used by the courts in determining whether amounts advanced to a corporation constitute equity capital or indebtedness. They are (1) the names given to the certificates evidencing the indebtedness; (2) the presence or absence of a maturity date; (3) the source of the payments; (4) the right to enforce the payment of principal and interest; (5) participation in management; (6) a status equal to or inferior to that of regular corporate creditors; (7) the intent of the parties; (8) "thin" or adequate capitalization; (9) identity of interest between creditor and stockholder; (10) payment of interest only out of "dividend" money; (11) the ability of the corporation to obtain loans from outside lending institutions. [, affirming a Memorandum Opinion of this Court.] See, to the same effect, , affirming . Bearing in mind the foregoing tests or factors, we turn to the facts of the instant case. Petitioner, at the time it issued the unsecured note *181 to the Laidleys, was extremely thinly capitalized. As a matter of fact, at that time not one cent had been paid in for its capital stock; and thus petitioner's debt-to-equity ratio, then and for approximately 1 year thereafter, was, in round numbers, 80,000 to 0. In this circumstance, we could almost take judicial notice of the fact that no outside lending institution would lend to a corporation on the day of its formation and before it had any amount at all paid in for its stock, approximately $80,000 on the corporation's unsecured promissory note. Also, there was a complete identity of interest between the putative "creditors" of the petitioner and petitioner's shareholders - William and Ella Margaret constituted all the members of each class. In addition, William was petitioner's president; and he presumably supplied the management of petitioner's affairs. Moreover, the interest that was payable on petitioner's note could only have come from the very same funds which would have been the source of the payment of dividends on its capital stock - if it had ever declared any (and in fact has not). In this regard, it is worth noting that petitioner paid interest for only so long *182 as it had distributive shares of profits from the Vulcan partnership; and, after it exchanged its partnership interest for an interest in the Vulcan corporation, it received no dividends from said corporation, and it paid no interest. William and Ella Margaret did not, however, demand payment, although true creditors (as distinguished from those who put their capital at the risk of the venture) would normally have done so. All of the foregoing, in our opinion, points in the direction of equity capital investment as the true character of the advance by William and Ella Margaret, which was represented by petitioner's note. On the other side of the coin, pointing toward an indebtedness, we find that the instrument is in form a promissory note (and thus pure debt, in form), having a fixed maturity date; the noteholders had the power to enforce payment according to its terms (although, as pointed out, they have not done so after petitioner defaulted); the note was not subordinated to the petitioner's obligation to any other creditor (but it is to be noted that petitioner had no other "creditors"); and the note was reflected on petitioner's books by a credit entry to a liability account, *183 notes payable. The most significant of these, in our estimation, are the first and the last. What we said in , regarding these factors, is sufficient to negative their importance in the instant case: But in determining the effect of transactions for Federal income tax purposes, form, though of some evidentiary value, is not conclusive. . The same is true of bookkeeping entries. . The important consideration is not the formalities, however meticulously observed, in which the parties cast their transactions, but rather the substance of such transactions and the true nature of the relationship created thereby. * * * Petitioner argues strenuously that the intent of the parties was to create a debtorcreditor relationship, pointing principally to the form of the note and the book entries. We believe, however, that regard must be had to all of the relevant circumstances surrounding the issuance of the note, in order to determine the true intent of the parties thereto. We conclude from such a broad consideration that the true intent of the *184 parties was to effect an equity capital investment by William and Ella Margaret in the petitioner. Petitioner further argues that its confessedly thin capitalization is of no moment, inasmuch as it required very little operating capital. The answer to this argument is that petitioner did require the interest in the Vulcan partnership; for the acquisition and holding of that interest was the very reason for petitioner's formation and its existence. And the partnership interest was also to be, and was, the principal source of petitioner's income. In our opinion, the thin capitalization factor or test has a valid application to a case like the present one, where the disproportionately high debt-to-equity ratio results from issuing a debt instrument (in form) for the purpose of acquiring the corporation's principal income-generating asset. The cases upon which petitioner places principal reliance - , reversing ; ; ; ; *185 and Dennis Corporation v. United States, an unreported case ( D.C., E.D. Va., 58-2 U.S.T.C. [*] 9644, ) - are distinguishable on their facts. For all the foregoing reasons, we hold that petitioner's note which it issued to William and Ella Margaret does not represent an "indebtedness" within the purview of section 163(a). We, therefore, sustain the respondent's disallowance of the deductions for the so-called "interest" payments which petitioner made to William and Ella Margaret, pursuant to the terms of said note. Decision will be entered for the respondent. Footnotes
1. All section references herein are to the Internal Revenue Code of 1954, unless otherwise specified.↩
*. Represents 2-month period of May and June 1953.↩
*. Date of payment, July 1, 1957.↩